The TRAVELERS INSURANCE
COMPANY

v.

Diane K. COLLINS, Administratrix of the Estate of Dr. Bernard S. K. Collins, Heather G. Collins, and Ruth Collins.

Civ. A. No. 79–295–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Feb. 13, 1980.

---

7. Einstein did not have a Ph.D., but most mathematics teachers are not Einstein.

James E. Haluska, Fairfax, Va., for plaintiff.

Robert C. Dunn, Alexandria, Va., Joseph H. Sharlitt, Washington, D.C., Cohen, Vitt & Annand, P.C., Alexandria, Va., for defendants Collins.

Fred C. Alexander, Booth, Prichard & Dudley, Alexandria, Va., for defendant Baird.

## OPINION FROM THE BENCH

WARRINER, District Judge.

The Court finds that sometime prior to his death and while he was married to Ruth Collins Baird, the decedent, Dr. Collins, sought and obtained membership in the Exxon Travel, Club, Inc. He had been married to Mrs. Baird approximately five years, and there is no evidence that the marriage was anything other than a tranquil and happy one.

At the time that he obtained the membership, he was apprised of the fact that the membership included a Travelers Life Insurance Company accidental death policy. In the absence of a specific designation, the death benefits would be payable to his estate in the amount of $20,000.

The evidence is that at the time he purchased the policy he advised his wife, the present Mrs. Baird, that he was going to name her as beneficiary. This statement by Dr. Collins that he was going to name Mrs. Baird as the beneficiary is corroborated by other evidence. The other evidence includes the fact that he named her the beneficiary of his National Service Life Insurance policy, the Estate Life Insurance Company policy, the American Life policy, and that he named her as the beneficiary in an endowment policy, or an annuity policy.

That he named Mrs. Baird beneficiary is also corroborated by the fact that Baird Exhibit One, an extract from the Travel Club's records, indicated that a beneficiary had been in fact named. That is to say, the exhibit indicates that the policy did not simply remain payable to the estate, in the absence of a named beneficiary; instead, the insurance company's record, sketchy as it is, indicates that a beneficiary was actually named. Unfortunately, the beneficiary so named is not identified on the exhibit and the testimony shows her identity cannot now be retrieved from the company's records.

The naming of Mrs. Baird as a beneficiary is further corroborated by Collins Exhibit B, the file copy of a letter from decedent dated November 3. The Collins letter of 3 November stated that he wanted to change the beneficiary from Ruth Collins, now Baird,. to Heather Collins and Diane Collins. All of these proofs are evidence of the fact that Dr. Collins named his wife, Ruth Collins, as beneficiary in the policy at the time that it was taken out.

Now, following 1972, when the policy was obtained, the marriage lost its tranquility, if it ever had it. After some time, Mrs. Baird in the fall of 1975, I believe, obtained a divorce. The alleged grounds for the divorce were mental cruelty, which substantially means nothing. Probably a much more significant factor in the divorce was the fact that three days after the divorce was granted, she married Mr. Baird. I think that that offers proof of the grounds for divorce and would speak much louder than the alleged mental cruelty.

It is also clear that with the breakup of the marriage, Dr. Collins no longer wished to do anything that would benefit his ex-wife. On several of the insurance policies that he owned, he changed the beneficiary to his children, Heather and Diane. On the National Service Life Insurance policy, however, he did not do that. I think that was an oversight.

On the Estate Life Insurance policy apparently he made an ineffective effort by communicating his desire to change the beneficiary to the agent, Mr. Richmond, but for one reason or another, which I am not aware of, that was ineffective. I am cer-

tain that it was ineffective because a court in another jurisdiction has so found. I am not so certain that the fact that he did not change that beneficiary is significant of a view that he intended Mrs. Collins to continue as a beneficiary of any property of his.

To the contrary, I find that was an inadvertence or a misfire; he intended to deprive her of the benefits of the Estate Life Insurance policy. I find that it would be consistent with his other actions and with his protestations to both his daughters on more than one occasion. I also find that it would have been entirely consistent that he *intended* to change and desired to change the beneficiary of the Exxon Travel Club policy from Mrs. Baird to his daughters.

The corroboration, so to speak, of the evidence that he did so would be the fact that he told his daughters that he intended to do so. This oral hearsay testimony is certainly as admissible and surely has as much weight as the statement he made to Mrs. Baird that he intended to make her the beneficiary. Indeed, it is entitled, and the Court gives it, great weight for more than one reason.

One is that though one is adjured by the Bible to cleave unto his wife and prefer her over his children, and over his mother and over his father, and so forth, experience has indicated that as between a wife and the children of one's own blood, people generally prefer the children, even if the wife is the mother of those children. If you go beyond that and have a wife who is the stepmother of the children, experience has indicated that one prefers the children of his own blood over the stepmother of those children. I hasten to add that there is no proof before me of those observations. I am merely putting on the record and giving the basis of why I give greater weight to the testimony that he stated that he was going to prefer his children over their stepmother.

The evidence goes further than that. He also stated that he was going to prefer his children over his *estranged* wife, their stepmother, and that is most consistent with what we know of human nature. Human beings don't generally go around trying to do nice things to spouses who divorce them and then marry another.

Further, there is the indication that he believed that his wife had defrauded him and that he had sought legal advice to see what he could do about a wife who had defrauded him. Ordinarily, one does not make a person that he believes defrauded him the beneficiary of a life insurance policy. If one is such a beneficiary, it is not unexpected at all that that beneficiary be changed, and the children would be preferred. This understanding of how people act and react is corroborative.

It is further corroborative that the records of the insurance company unequivocally show that the beneficiary was changed. Insofar as Baird One supports Mrs. Baird's proof that she was the beneficiary named, it equally supports the proof that the children were the beneficiaries named. It does not say "who." It merely says "what." It doesn't even say "when." Yet, there was a beneficiary named. So I accept that as corroborative.

I also have the letter of 3 November. Perhaps the original reveals no more than the photostatic copy, but I would much prefer to have compared the original with the photostatic copy. In my view, the weight to be given to the letter of 3 November might be affected in many ways. It would be affected by corroboration, particularly of disinterested corroboration, of the circumstances under which it was found. Is it a fabrication? Any thought of fabrication could be stilled if we had disinterested evidence. It was not offered.

■ When one is a trier of the fact, one is justified in saying that in proving a fact that is within the control of a party and the party fails to offer that proof, that it may be assumed that the proof was not there; or that if it were there, it was contrary to the interests of the party. At the time the letter was discovered there was present the children's mother. We had a friend from Maryland, and the possibility of another

person who perhaps was wholly disinterested, but not any of them are here. That detracts from the value of the letter of November 3.

If the testimony were that it were found in the wastebasket, that would be one thing. If it were found on the middle of Collins' desk, that would be another matter. If it were found in chronological order in a business correspondence file, that would show evidence that it was produced in the ordinary course of his affairs, and not a manufactured piece of evidence brought forward for the purposes of proof. That would make a difference.

It is entirely possible that such a showing was impossible at this late date. If so, proof that it was impossible would have been very helpful to the Court. In the absence of a showing that this is the file, these are the other papers and documents that were in the file, this is the nature of those documents, here is where it was in the file, and here it is, I find that while the letter of 3 November is corroborative, quite a bit of additional weight and value that might have been gathered around that letter is lost.

Now, both of the parties have produced evidence that they were the named beneficiaries, as I have pointed out before. No one has introduced any evidence that there wasn't a named beneficiary. Since there was a named beneficiary, it is clear that I cannot find for the estate, there being no evidence to support a finding for the estate. It is not that there is insufficient evidence, or unsatisfactory evidence; there is simply no evidence to support a finding that the beneficiary was not designated. Hence no judgment in favor of the estate can be supported.

Now, I have related the evidence which supports a finding that Mrs. Baird was named as beneficiary.

I have related the evidence that supports the finding that Heather and Diane Collins were named beneficiaries.

Counsel for Mrs. Baird points out that this dilemma, the two bundles of evidence, presents the duty for the Court to resolve which of the two is more satisfactory, which of the two preponderates. But this is a wholly gratuitous burden for the Court, for the lawyers, and more particularly, for the parties. The parties are the ones that have had to suffer through this lawsuit. They are the ones who have retained counsel, taken depositions, filed answers to interrogatories, appeared in court, and have had to leave their jobs and whatever. They are the ones that have had to come down from West Virginia, sit around, and wonder what this was all about. All of this, everything that has taken place in this trial is the fault, and I mean this without any imputation of bad faith, just the fault of Mr. Haluska's client, the accident insurance company.

It is clear that they had a duty to maintain adequate records. I don't think that there was any dispute about that. Mr. Haluska would affirm that. It is also clear that they didn't carry out that duty. They, through mistake, pushed a button on a computer that destroyed the evidence that Dr. Collins had made to name the beneficiary. They destroyed that evidence, except for the pitiful little evidence that you all have been able to come up with, or at least, that you presented to me today. That mistake on the part of Travelers has caused both parties to incur court costs and legal expenses. The mistake on the part of Travelers has brought the Court to the brink of saying, "Mrs. Baird prevails, and the Collins children take nothing," or that "the Collins children prevail and Mrs. Baird takes nothing."

When, all the while, it may very well have been that my judgment for the Collins children is wrong, and Mrs. Baird is entitled to the money, or that my judgment for Mrs. Baird is wrong, and that the Collins children should have prevailed.

Mr. Alexander called it a windfall. Indeed, it may be, either way, that one or the other walks away with all the marbles, depriving the other of any of them, not because they were entitled to it, but because, faced with the problem of Travelers having destroyed the records, one was able, on this

17th day of October, to come up with just a little more evidence than the other.

Well, that is not what Dr. Collins wanted to pay for. He bought a policy of insurance with a responsible insurance company which had the duty to pay to the named beneficiary the proceeds.

Now, it is clear that he did not buy a perfect insurance contract; he did not live in a perfect world. There will ordinarily be times when an insurance company could say, "We cannot determine who the beneficiary is. Therefore, reluctantly, we are going to require the beneficiaries to come into court and prove who the beneficiary is."

I cannot say that Dr. Collins didn't pay for that. That is part and parcel of living with other people. There are going to be disputes that have to be resolved, and have to be resolved at a cost.

We don't have the case of Travelers saying, "Through no fault of ours, we don't know who the beneficiary is. Therefore, we will just require the beneficiaries to fight it out, and whichever one comes up on top, we will pay the money to them. We want to be protected from having to pay the others." I don't believe that Travelers is in that favored position. I think Travelers is in the position of having created this problem, and of having done very little to resolve it.

I would be most interested to find out why Maryann checked the blank on Baird One that a beneficiary had been designated. I would like to know upon what basis she made that conclusion. She couldn't have made that conclusion on the basis of the change in beneficiary. Because had she done that, we wouldn't be here. Travelers would have the record it needed and would pay the benefits accordingly.

We also have a change of beneficiary form. I don't think she could have made it on the basis of this form, but I don't know for certain. She had to have made it on the basis of some entry that may still remain in the computer that was made at some prior time. That time could be very critical. If the time were 1972, I would conclude that whatever record they had, it supported Mrs. Baird's position.

If the time were November of '75 when the entry was made, the fact that an entry had been made at that particular time, would certainly aid me in concluding that it was the Collins children beneficiary change that was noted on the record.

Travelers did not come forward with that proof. They merely said, "We pushed the wrong button through mistake, and so we throw upon the claimants the duty of telling us what we should do."

Counsel for Mrs. Baird argues that having found the above facts, and I believe I fairly well stated the factual basis which he offers, that I have the power to direct that Travelers pay both. I think he says that I have the power to direct that Travelers pay both the full amount, face amount of the policy, $20,000 each, not that it be split between them, but that each receive the full benefit. He is arguing that to split it between them does not do anything but simply make what is wrong a little less wrong. It still deprives the Collins' children of $10,000 that they are entitled to if they were the beneficiary. It gives to Mrs. Baird $10,000 that she had no entitlement whatever, if the Collins' children were the beneficiaries, and vice versa. Solomon suggested halving the baby but he was still hunting for evidence of ownership at the time. Here both sides have rested.

I think that he is probably right. If his argument is to be followed, both should receive the full amount. Obviously, it is not right that neither receive any amount; nor is it right that the estate receive it because there is no evidence that supports the estate receiving it. I am not unmindful of the fact that the beneficiaries of the estate are the two Collins girls. Though I might adopt the form of saying, "We will give it to the estate," the substance is that the Collins girls would win. But the evidence doesn't let me take that route.

I have never heard of doing what Mr. Alexander suggests doing. Counsel for the Collins girls says that he doesn't even want it done. Mr. Haluska states he never heard of it, either, and that I can't do it. He asks that I don't do it.

Gentlemen, the evidence is in equipoise. The fact, as found by the Court, that he named Mrs. Baird as a beneficiary—there is evidence to support it, credible evidence, believable evidence, natural evidence that comports with what we know of human nature, of what we know of the man.

The same is true of Heather and Diane. There is evidence to support that position. It comports with his statements. It comports with his actions with respect to other policies. It comports with what we know his attitude toward his former wife was. Which one prevails?

The Court finds that the proof of who is the beneficiary is in equipoise. The Court finds that the failure or the inability of both parties to prove who is the beneficiary is wholly due to the fault of the stakeholder. Accordingly, the Court directs that the stakeholder shall pay to each party the amount provided in the contract with interest.

Judgment is entered for the individuals Heather Collins and Diane Collins, jointly, against the stakeholder for the full amount of the policy with interest.

Judgment is entered for Ruth Collins Baird against the stakeholder for the full amount of the policy with interest.